UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| DEREK VICE, <br><br> Plaintiff, <br><br> vs. <br><br> DR. MARY CARPENTER, LT. FITZU, C/O BOYSEN, C/O ROBERT KIRVIN, PA TAMMY TOP, DR. JOE HANVEY, SGT. HERMANN, CORRECTIONAL OFFICER STOYNOV, <br><br> Defendants. | 4:16-CV-04127-KES <br><br><br> ORDER GRANTING MOTION FOR SUMMARY JUDGMENT IN PART AND DENYING IN PART AND DENYING MOTIONS FOR PRELIMINARY INJUNCTION AND TO APPOINT COUNSEL |

Plaintiff, Derek Vice, filed an amended complaint alleging that defendants violated his rights under the Eighth Amendment, the Americans with Disabilities Act (ADA), and the Rehabilitation Act (RA). Docket 1; Docket 10; Docket 13. Defendants move for summary judgment and claim qualified immunity. Docket 57.

**FACTUAL BACKGROUND**

The facts, viewed in the light most favorable to the non-moving party, are as follows:

Derek Vice is an inmate currently incarcerated at the South Dakota State Penitentiary (SDSP) in Sioux Falls, South Dakota. Docket 61 ¶ 1. Vice suffers from some back pain and has had several tests and evaluations of his back at CORE Orthopedics. In the past, Vice had an order that indefinitely authorized him the use of a wheelchair. Docket 58-3. That order was discontinued when

Vice was transferred to the Mike Durfee State Prison (MDSP) in Springfield, South Dakota. Docket 61 ¶ 14. On April 15, 2015, Vice received a spinal x-ray that revealed he had "mild to moderate spondylosis." Docket 58-3. On May 21, 2015, after returning to SDSP, Vice visited Health Services complaining of back pain. *Id.* At the visit, Vice requested that his order for use of a wheelchair be reinstated. *Id.* RN Lisa Harlan noted at that time that Vice did not have a diagnosis to support the use of a wheelchair. *Id.*

On September 26, 2015, Department of Corrections (DOC) staff informed RN Christopher Bruns that Vice was complaining of chest pain and shortness of breath. Docket 58-4. RN Bruns told DOC staff to bring Vice upstairs to Health Services. *Id.* DOC staff then informed RN Bruns that Vice refused to go upstairs, so RN Bruns visited Vice in his cell. *Id.* RN Bruns asked Vice why he refused to go upstairs and Vice responded that "he has a wheel chair order that never expires from 2014." *Id.* Vice further stated that he needs the wheelchair and that he would pass out if he tried to walk all the way to Health Services. *Id.* RN Bruns then told Vice that, during the previous two evenings, he had observed Vice lie next to his cell door and then get up from that position without difficulty or extra effort. *Id.* RN Bruns reiterated that Vice needed to come to Health Services to be properly assessed by medical staff and that he would investigate Vice's claim about the wheelchair order. *Id.* Vice refused to come to Health Services without a wheelchair. *Id.*

On November 24, 2015, Health Services received a letter from Advocacy Services recommending that Vice be permitted to use a CPAP machine and that

he be permitted to use a walker with wheels. Docket 58-5. The letter also stated that Vice has "asked the nurse to re-order his Neurotin and the use of a cane." *Id.* And the letter ended stating that Vice's requests were reasonable and asked for a response to his requests. *Id.* On December 30, 2015, Vice visited Health Services "regarding a reported mass on his left hand which [Vice] states has been present for approximately 1.5 years." Docket 58-7. Dr. Eugene Regier observed Vice and stated that Vice was "ambulatory" and made a treatment plan for Vice's mass. *Id.* Dr. Regier also recommended that Vice be provided with a replacement CPAP machine. *Id.* Vice did not ask for a wheelchair. *Id.* On February 2, 2016, RN Jessica Schreurs responded to the November 24 letter from Advocacy Services stating that Vice had received a CPAP machine and an order for Neurontin. Docket 58-6. RN Schreurs also stated that Vice has a current order for a cane and had not made a request for a walker at his December 30 visit to Health Services. *Id.* She encouraged Vice to attend sick call if he felt he needed a walker. *Id.*

On February 1, 2016, RN Lisa Harlan observed Vice "lying on his back with both knees bent. Report from officer states [Vice] allegedly fell somewhere around 1450 while in rec cage but was unwitnessed." Docket 58-8. Vice refused to "cuff up" without a wheelchair, so RN Harlan could not enter the rec cage to further examine Vice. *Id.* Vice claimed he needed a wheelchair to get back to his cell and shower because he was in excruciating pain. *Id.* RN Harlan stated that Vice was able to "move his legs without difficulty but states the pain in his lower back is unbareable [sic] . . . ." *Id.* Vice was able "to drag his body

across the floor to take his pills" and appeared to not be in distress. *Id.* RN Harlan also noted that Vice had a current cane order but that his cane was taken away when he was placed in the SHU. *Id.*

On February 4, 2016, Vice reported to Health Services and told RN Ashley Campbell that "he can not be released from the SHU unless he has a wheelchair for back pain. [Vice] state[d] multiple back injuries over the years that have caused this back pain." Docket 58-10. Vice told RN Campbell that he had a scheduled appointment for the following day with the provider and would wait until his appointment to express his desire for a wheelchair. *Id.* On February 5, 2016, Vice communicated to Dr. Regier that a few days prior to the appointment "he fell over backwards when he lost his balance and injured his lower back." Docket 58-11. Vice stated that since the fall he could not walk because when he tried to walk he felt weak. *Id.* He also stated that he could not use stairs. *Id.* Dr. Regier noted that Vice presented in a wheelchair, he reacted to moving passively and actively, and "show[ed] no evidence of any atrophy of musculature of the lower extremities and sensation appear[ed] to be grossly intact as well." *Id.* As a result of his visit, Dr. Regier ordered that Vice utilize a wheelchair for two weeks and not use stairs for two weeks. *Id.*

On February 18, 2016, Vice came to Health Services in a wheelchair and requested to have his order for a wheelchair and no stairs extended. Docket 58-12. Both orders were set to expire on February 18, 2016. *Id.* PA Brad Adams gave RN Lonna Konglin permission to extend the orders by one day so that Dr. Regier could evaluate Vice's continued need for a wheelchair. *Id.* On March 3,

2016, Vice received an MRI[1] of his lumbar spine at Avera McKennan Hospital. Docket 58-14. The results of the MRI found that "[t]here is transitional anatomic variant anatomy" and "partial lumbarization of the S1 vertebral body with the right S1-S2 pseudarthrosis." *Id.* There was also a "bony hypertrophy of the pseudarthrosis and right lateral marginal osteophyte S1-S2 level producing mild stenosis of the right foramen." *Id.*

On March 9, 2016, Health Services received the results of the MRI. Docket 58-16. Dr. Regier then met with Vice about the MRI results and ordered that Vice have a walker for three months. Docket 58-17. On March 15, 2018, Vice visited Health Services and asked about his wheelchair. Docket 58-18. RN Bruns informed Vice that his wheelchair order had expired. *Id.* Vice responded stating, "how are you going to take away a wheelchair from someone who can't walk?" *Id.* Vice then stated, "we have a Dr. that really wants me to walk, and so do I, but everything needs to happen in its own time." *Id.* RN Bruns explained that the doctor ordered Vice a walker and that he would be brought back to his cell in a wheelchair but that a walker would be provided once he was back in his cell. *Id.* Vice then left the waiting room to be escorted to his cell. *Id.*

On March 31, 2016, Core Orthopedics evaluated Vice because of his continued complaints of low back pain. Docket 58-9; Docket 58-19. Dr.

---

[1] On September 28, 2016, Dr. Jeffery Baka examined Vice's MRI at Avera McKennan Hospital. Docket 58-48. Dr. Baka found that Vice had "[m]oderate degenerative disc disease with mild spinal stenosis at C6-7. Left paracentral disc protusion/osteophyte complex at C6-7 at C6-7 focally indents the left ventral spinal cord. There is left C6-7 neural foraminal stenosis." *Id.*

Gregory Alvine at CORE Orthopedics noted that the MRI revealed "degenerative disc and collapse at L4-L5 and L5-S1 and left foraminal stenosis at L5-S1 with some very mild stenosis at L4-L5." Docket 58-9. Dr. Alvine discussed with Vice "that degenerative discs can cause some back pain but oftentimes there is not a good surgical option for it so [Vice] need[s] to work on his paraspinal muscle strengthening exercises for long-term management." *Id.* Dr. Alvine advised Vice that "[w]e are going to try a left L5 transforaminal epidural which might help with the symptoms in his leg." *Id.* Dr. Alvine recommended physical therapy for his low back pain and Vice agreed with Dr. Alvine's plan. *Id.* Thus, Dr. Alvine placed Vice on a "home program" and instructed him to complete "strengthening exercises 2-3x/ week x 1 month." *Id.*

On April 6, 2016, Vice visited Dr. Regier in Health Services in a wheelchair and complained of low back pain and neck pain. Docket 58-20. Vice told Dr. Regier that he did not feel as though he had received sufficient treatment for his back and he wanted to have surgery. *Id.* Dr. Regier told Vice that surgery was not recommended at this time and "may or may not be beneficial." *Id.* Dr. Regier noted that Vice had been "using a wheelchair for virtually all his means of getting around the prison." *Id.* And Dr. Regier noted that Health Services continued to encourage Vice to be ambulatory and strengthen his muscles but he did not make "any great efforts to get out of his wheelchair." *Id.* Dr. Regier reordered Vice's wheelchair for two additional months. *Id.*

On April 7, 2016, Health Services "went cell front to notify [Vice] of medication" and observed Vice lying down with his feet up and observed him walk to his cell front and back to his bed without any assistive device. Docket 58-21. On April 22, 2016, Vice underwent a transforaminal nerve root block at Avera McKennan Hospital. Docket 58-22. On May 3, 2016, Vice went to Avera Therapy Center for physical therapy. Docket 58-23. He reported that he had back pain for 30 years, and about three months prior, he slipped in the shower and that caused an increase in symptoms. *Id.* He also reported that the transforaminal injection did not reduce his pain and he wanted stronger medication. *Id.* On June 15, 2016, Vice visited Health Services and RN Schreurs noted that Health Services had "[r]eceived an administrative remedy request from patient requesting a handicap classification due to pain and being in a wheelchair." Docket 58-27. RN Schreurs also noted that Vice had an approved neurosurgical consult that still needed to be scheduled. *Id.* On July 7, 2016, Vice visited Health Services and RN Bowers observed Vice "transfer from wheelchair and ambulate with a cane to scale and exam table . . . without difficulty." Docket 58-28. RN Bowers further noted that Vice's "gait was steady and [he] did not show any signs of pain with ambulation." *Id.*

On July 14, 2018, Vice was seen by Dr. Wissam Asfahani for a neurological consult. Docket 58-30. At the consult, Vice asked for a medical order for a wheelchair several times because his wheelchair was taken from him the day before. *Id.* Dr. Asfahani "told Vice that it would actually be worse for him to be in a wheelchair and there was no medical reason for him to have

one." *Id.* Dr. Asfahani also told Vice that there was no reason for him to have a cane. *Id.* Vice also asked Dr. Asfahani for pain medication and Dr. Asfahani refused. *Id.* Later the same day, Vice visited Health Services after his appointment with Dr. Asfahani. Docket 58-31. LPN Ashley Campbell noted that Vice "ambulated with cane without difficulty." *Id.* And RN Carol Simon noted that Vice argued about his need for a wheelchair but that the provider stated that he did not need a wheelchair. Docket 58-32. As a result of the visit, Dr. Asfahani recommended Vice have a left L5-S1 microdiscectomy surgery. Docket 58-2.

On July 16, 2016, Vice presented to medication pass and asked if he was starting new medication because his doctor [Dr. Asfahani] recommended Tramadol. Docket 58-32. RN Shelbi Backhaus noted that Vice "was walking with his cane and was ambulating just fine." *Id.* On July 19, 2016, Vice came to the medication window and told LPN Jennifer Jensen that he would go on a med strike if he did not get the Tramadol that the neurosurgeon recommended. Docket 58-33. On August 19, 2016, Dr. Carpenter denied Vice's Utilization Management (UM)[2] request for a microdiscectomy, as recommended by Dr. Asfahani, because there was inconsistent documentation regarding Vice's symptoms and because Dr. Carpenter believed that Vice was a poor candidate for surgery due to his history of not following treatment plans. Docket 58-58; Docket 59 ¶ 65.

---

[2] UM requests refer to request for medical care from outside providers.

On September 12, 2016, Vice reported to Health Services after his request for surgery was denied. Docket 58-35. CNP Tammy Top informed Vice that his surgery was denied "based on inconsistent report of symptoms and patient's activities at rec[.]" *Id.* When CNP Top referred to reports that Vice had attended rec without his cane he responded, "I don't need it. It doesn't help[.] [I]t's only for balance." *Id.* CNP Top also noted that Vice climbed onto the exam table without difficulty. *Id.*

On October 17, 2016, RN Harlan and RN Jeremy Tamisiea went to the federal hall to assess Vice because Vice was complaining of back pain and claimed he was paralyzed. Docket 58-37. Vice told RN Harlan that he fell on October 15, 2016, and had been in pain since that time. *Id.* The nurses did not see any bruising on his arms or back and did not see any scratches. *Id.* RN Tamisiea then conducted a variety of tests on Vice and concluded that he was "unable to fully assess as patient is not cooperative will not keep eyes closed [when instructed] and there are inconsistencies in patient stating he has decreased sensation but also responding to deep tendon reflexes and negative Babinski sign." *Id.* RN Tamisiea also noted that the "patient briskly twisted his back in an aggressive manner during assessment of his spine." *Id.*

On October 19, 2016, RN Backhaus received a call from David Fitzhugh[3] asking whether Vice was paralyzed. Docket 58-41. RN Backhaus stated that he was not paralyzed and did not have an order for a wheelchair. *Id.* Fitzhugh

---

[3] David's Fitzhugh's name is spelled incorrectly in the heading. *See* Docket 57 at 1. Thus, the court utilizes the correct spelling throughout the opinion.

then authored an incident report describing Vice's facility rules violation. Docket 58-42. The report states, "Inmate Vice pretended he was paralyzed from the waist down during a fire drill today. . . . [H]e claimed chest pains and demanded health services come to his cell when we were going to transport him by wheel chair." *Id.* Also on October 19, 2016, Ryan Vanderaa authored an incident report stating that "Vice came from the hill for disciplinary reasons. . . . I wheeled him over to the holding enclosure in section six, he stood up on his own, turned around, and sat back down." Docket 58-43. Later on the same day, Justin Korth authored an incident report. Docket 58-44. Korth stated that he went to the section six holding cell to move Vice to cell 96. *Id.* Vice refused hand restraints, demanded a new mattress, and expressed his thoughts about committing self harm. *Id.* Vice continued to yell and refuse directives to be placed in hand restraints. *Id.* Finally, Jess Boysen pulled out his OC spray and gave a final directive to Vice that Vice refused. SCO Boysen then sprayed Vice and Vice "stood up, turned around, and took off his gown to block the cuffport of the holding cell. *Id.*; *see also* Docket 58-45; Docket 58-46; Docket 58-47.

On October 25, 2016, PA Michael Hanvey[4] evaluated Vice because he had gone on a hunger strike. Docket 58-49. PA Hanvey confirmed that Vice had missed at least nine meals. *Id.* Vice told PA Hanvey that he fell on October 15, 2016, and had been unable to walk since that time. *Id.* PA Hanvey noted that

---

[4] Vice refers to Michael Hanvey as a Doctor in his pleadings. Michael Hanvey is Physician's Assistant. Docket 57 at 1.

Vice's exam was completely inconsistent, so it was difficult to identify Vice's source of discomfort. *Id.* PA Hanvey stated that he saw "no indication why he needs a wheelchair" and denied the request for a wheelchair. *Id.* PA Hanvey also stated that he believed Vice was "a very poor surgical candidate given his level of motivation to follow treatment recommendations[.]" *Id.* PA Hanvey offered Vice the use of a walker and cane and Vice refused. *Id.* Later the same day, Amber Hagen documented that she witnessed Vice transfer himself from the wheelchair to the toilet and then to the floor without pain or problems. Docket 58-50. On October 27, 2016, Vice visited LPN Alyssa Johnson at Health Services and complained that he was unable to walk. Docket 58-51. LPN Johnson noted that "multiple reports from unit staff state that [Vice] walks throughout the day." *Id.*

On November 10, 2016, Vice visited Health Services in a wheelchair stating that he had not showered since October 15, 2016, and stating that he wanted a walker. Docket 58-3. On November 14, 2016, Health Services received a medical kite from Vice that stated, "This is the 29th day with no shower or mobility and I have been bed ridden I need pain treatment and a wheelchair order so I will be able to get to the downtown appt that is scheduled." Docket 58-54. On November 16, 2018, Health Services received a medical kite from Vice that stated, "This is the 30th day since I fell and I have not been given any pain relief of any means of mobility you are causing me to miss my religious programs and my legal access and any other schooling I would like to attend." Docket 58-55. On November 19, 2016, Health Services

received a kite stating, "My brain is pounding on my skull and my head keeps falls (sic) forward from the pain. I am requisting (sic) a pain reliever and a neck brace and have been for days." Docket 58-56.

On November 24, 2016, RN Hollie Nedved visited Vice at his cell and observed him walk toward the cell front. Docket 58-57. RN Nedved encouraged Vice to take his medication and Vice stated that he had stopped taking his medication 40 days earlier. *Id.* On November 23 and November 24 of 2016 Health Services received medical kites from Vice where he asked for a wheelchair, neck brace, and pain medication. *Id.* He also stated that he had not showered since October 15, 2016. *Id.* On November 30, 2016, Avera Medical Group Neurology issued its report on Vice's EMG/Peripheral Nerve Conduction Study. Docket 58-59. The result of the study stated that "There is no convincing electrophysiologic evidence of a radiculopathy, plexopathy or other mononeuropathy affecting the bilateral upper or lower extremities. There is also no evidence of a more diffuse myogenic disorder or of CIDP." *Id.*

On December 5, 2016, RN Schreurs received a report that Vice stated that he could walk and would like a wheelchair "to walk behind and rest if necessary." Docket 58-60. RN Schreurs discussed the request with Dr. Joe Hanvey and decided to order a walker with a seat for ninety days. *Id.* On December 14, 2016, Vice visited Health Services to discuss the results of his EMG/nerve conduction study. Docket 58-63. Dr. Regier discussed the results of the test with Vice and Vice requested "the strongest pain medicine you can

give me." *Id.* Dr. Regier requested a follow-up appointment with Dr. Asfahani. *Id.*

On January 17, 2017, Dr. Asfahani evaluated Vice for chronic neck pain and low back pain. Docket 58-67. Dr. Asfahani's impression stated that "the lumbar spine show[s] partial lumbarization of the S1 vertebral body with multilevel disc degeneration." *Id.* His impression also states that Vice has "mild canal stenosis," "foraminal stenosis with chronic mass effect," and "moderate degenerative disc disease." *Id.* Dr. Asfahani's treatment plan consisted of physical therapy, an updated MRI, a left C6-7 epidural steroid injection, and another follow-up appointment. *Id.*

On May 15, 2017, Vice had a follow-up appointment with Dr. Asfahani. Docket 58-72. At the appointment, Dr. Asfahani noted that Vice had recently undergone a bilateral L3, L4, L5 medial branch block but the series could not be completed due to Vice's pain and discomfort. *Id.* As a result of the appointment, Dr. Asfahani faxed his recommendations to the prison stating that he recommends that Vice go to Avera Pain Management for pain management and stated that Vice is a candidate for a left L5S1 lumbar microdiscectomy. Docket 58-73. Vice was then scheduled for surgery. Docket 58-74.

On June 12, 2017, Vice received his left L5S1 lumbar microdiscectomy and returned to Health Services with DOC staff post-operative. Docket 58-75. Upon returning, Health Services noted he felt lethargic. *Id.* Around two hours later, RN Rachel DePree noted that Vice was visiting with a patient in the

adjacent bed and moving in the bed without visible pain. *Id.* Vice was also able to walk himself to the scale without help and stated that his pain was 10/10 in his lower back. *Id.*

On June 16, 2017, Vice went to the med window and "inquired about wanting to refuse his upcoming outside appointment in order to have his medical hold revoked." Docket 58-77. On June 17, 2017, Vice presented to sick call "requesting to sign a refusal for upcoming neurology follow up as he wants his medical hold lifted. [Vice] is trying to be moved to Springfield. ROR is signed at this time for scheduled follow up." *Id.* On August 14, 2017, Vice had a follow-up appointment with Dr. Regier regarding his surgery. Docket 58-79. Vice reported that he was doing well but still had some middle and low back pain. *Id.* Dr. Regier recommended that Vice continue to heat and ice his back as well as do physical therapy. Docket 58-79. He also recommended limited lifting, bending, and twisting. *Id.*

## LEGAL STANDARD

Pro se filings must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). Even with this construction, "a pro se [filing] must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013). Summary judgment on all or part of a claim is appropriate when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also In re Craig*, 144 F.3d 593, 595 (8th Cir. 1998). The moving party

can meet its burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party has met this burden, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). "Further, 'the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment. . . . Instead, the dispute must be outcome determinative under prevailing law.'" *Id.* at 910-11 (quoting *Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir. 1992)). The facts, and inferences drawn from those facts, are "viewed in the light most favorable to the party opposing the motion" for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## DISCUSSION

Vice alleges under 42 U.S.C. § 1983 that the defendants violated his Eighth Amendment rights and violated his rights under the ADA and RA. Defendants allege that they are entitled to qualified immunity and there is no question of fact as to whether the defendants violated Vice's rights.

## I.     Whether CNP Top, PA Hanvey, and Dr. Carpenter were Deliberately Indifferent to Vice's Serious Medical Need

To show a prima facie case under 42 U.S.C. § 1983, Vice must show that (1) defendants acted under color of state law and (2) "the alleged wrongful conduct deprived [him] of a constitutionally protected federal right." *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009) (citation omitted). "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether a government official is entitled to qualified immunity the court asks (1) whether the facts alleged, viewed in the light most favorable to plaintiff, demonstrate the official's conduct violated a constitutional right, and (2) whether the constitutional right was clearly established at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The court may address the elements in any order and if either of the elements is not met, then the official is entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Vice alleges that CNP Top, PA Hanvey, and Dr. Carpenter violated his Eighth Amendment right under the Constitution of the United States. The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. Amend. VIII. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the

Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05. Vice must show that he suffered objectively serious medical needs and that defendants actually knew of but deliberately disregarded those needs. *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997).

### A. Access to a Wheelchair

Vice alleges that CNP Top and PA Hanvey were deliberately indifferent to his medical needs because he cannot walk without a wheelchair and they refused to provide him with a wheelchair. Docket 10 at 2. First, the court must analyze whether Vice has a serious medical need. "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.' " *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)).

Between May 2015, when Vice returned to SDSP, and September 2016, when Vice filed this lawsuit, Vice had a medical order for a wheelchair on two occasions. In February 2016, Dr. Regier ordered Vice the temporary use of a wheelchair for a period of two weeks.[5] Docket 58-11. And in April 2016, Dr.

---

[5] PA Adams extended that order for one day so Dr. Regier could re-examine Vice. Docket 58-12.

Regier ordered Vice the temporary use of a wheelchair for two months. Docket 58-20. Other than those two time periods, no medical personnel diagnosed Vice with a condition requiring the use of a wheelchair, and instead, medical personnel prescribed use of a walker and physical therapy. Docket 58-9; Docket 58-30; Docket 58-49.

The evidence in the record indicates that on September 12, 2016, CNP Top informed Vice that his request for surgery was denied and she encouraged Vice to utilize his cane. Docket 58-35. As of September 12, 2016, Vice did not have a medical order for a wheelchair and only had a medical order for a cane. The record indicates that PA Hanvey evaluated Vice on October 25, 2016, and that PA Hanvey stated that Vice's symptoms were inconsistent so he did not order the use of a wheelchair. Docket 58-49. Instead, PA Hanvey issued an order for use of a walker or a cane. *Id.* PA Hanvey also evaluated Vice on December 5, 2016, and PA Hanvey similarly ordered Vice the use of a walker. Docket 58-60. In October and December of 2016, PA Hanvey evaluated Vice's symptoms and ordered a course of treatment for Vice's back pain. PA Hanvey did not ignore Vice's symptoms, but instead he attempted to treat them.

Further, there is no evidence that Vice's need for a wheelchair was "so obvious that even a layperson" could determine that he needed attention.

> [The Eighth Circuit] has found a serious medical need that was obvious to a layperson where an inmate: was pregnant, bleeding, and passing blood clots; had swollen and bleeding gums and complained of extreme tooth pain; experienced excessive urination, diarrhea, sweating, weight loss, and dehydration related to known diabetes; or exhibited signs of early labor and her medical records clearly documented a history of rapid labor and delivery.

*Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008) (internal citations omitted).

In *Jones*, the Eighth Circuit affirmed the district court's grant of summary judgment finding that an inmate did not have a serious medical need. *Id.* at 483. The inmate "was unable to stand or walk under her own power, was google-eyed and unresponsive, was rolling on the ground while grunting and groaning, was bleeding from the mouth, smelled as if she had urinated on herself, and was breathing at a very rapid rate[.]" *Id.* at 482 (internal quotation omitted). But the Eighth Circuit found that these symptoms were not so obvious that a layperson would recognize that the inmate needed medical attention. *Id.* at 483. The court noted that the inmate was a "difficult inmate" with "behavioral problems, psychological problems, and incompatibility with other inmates." *Id.* Thus, without other information, "a reasonable jury could not find that [the inmate] had a medical need so obvious that a layperson would easily recognize the need for a doctor's immediate attention." *Id.*

Here, Vice demonstrated conflicting symptoms. At times, he reported to medical staff he could not walk and was in immense pain. At other times, medical staff observed Vice walking and moving around without pain. Further, during much of this time Vice had an order for a walker or a cane, and he sometimes refused to use them. Docket 58-49. Unlike bleeding, blood clots, or excessive urination, these inconsistent reports of pain were not so obvious that even a layperson would easily recognize the need for a doctor's attention.

**B. Refusal of Back Surgery**

Vice alleges that Dr. Carpenter violated his Eighth Amendment right because she denied a request for surgery on his back after Dr. Asfahani recommended that Vice have surgery. Docket 10 at 2. A medical decision as to the proper course of treatment for an injury "does not represent cruel and unusual punishment." *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). "Absent deliberate indifference, inmates do not have a right to receive a specific or desired course of treatment." *Mace v. Johnson*, 2014 WL 538580, at *11 (D. Minn. Feb. 11 2014). Doctors are "free to exercise their independent medical judgment." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). "The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

In *Jolly v. Knudsen*, 205 F.3d 1094 (8th Cir. 2000), the Eighth Circuit upheld the district court's award of summary judgment in favor of a doctor who changed an inmate's dosage levels. *Id.* at 1097. The prison doctor increased the inmate's medication dosage levels after observing that "the concentrations of the medicines in [the inmate's] blood were at sub-therapeutic levels." *Id.* The doctor also saw the inmate "on numerous occasions following the dosage changes, attempted various corrective actions, and referred [the inmate] to a specialist." *Id.* The Eighth Circuit reasoned that the inmate must show more than "mere disagreement with treatment decisions" to support a constitutional

violation and that the record clearly established that the prison doctor was attentive and attempting to correct the inmate's dosage levels. *Id.* at 1096-97 (quoting *Estate of Rosenberg*, 56 F.3d at 37.

In *Phillips v. Jasper County Jail*, 437 F.3d 791 (8th Cir. 2006), the Eighth Circuit upheld the district court's award of summary judgment to a prison doctor who did not "prescribe the proper medication and fail[ed] to monitor his prescription prior to [the inmate's] seizure." *Id.* at 795. The court stated that "[a]t most . . . [the inmate's] complaint makes out a case for malpractice." *Id.* But the court reasoned that the mere fact that the inmate disagreed with the doctor as to the proper treatment method for his seizures does not establish deliberate indifference. *Id.*

Vice establishes that he has a serious medical need for a surgery because another physician has indicated that surgery on his back is medically necessary. But Vice fails to establish that Dr. Carpenter acted with deliberate indifference to Vice's medical need. Dr. Carpenter articulated that she disagreed with Dr. Asfahani's recommendation for surgery because Vice had inconsistent reports of symptoms, and in the past, Vice had not followed treatment recommendations. Because of these concerns, Dr. Carpenter believed that Vice was a poor candidate for surgery. Further, Vice was seen by medical personnel on numerous occasions and during these visits, medical personnel treated Vice's back injury and offered him the use of a cane, which he often refused. Docket 58-35; Docket 58-49. Similar to *Jolly*, Dr. Carpenter was attentive to Vice's needs and attempted to treat his pain without the use of

surgery. Dr. Carpenter's difference in medical opinion is not deliberate indifference.

## II. Excessive Force

Vice alleges that Fitzhugh, Boysen, Kirvin, Hermann, and Stoynov utilized excessive force in violation of his Eighth Amendment rights. "The Eighth Amendment protects incarcerated prisoners from cruel and unusual punishment, and this protection is grounded upon their right to be free from unnecessary and wanton infliction of pain at the hands of correctional officers." *Jones v. Shields*, 207 F.3d 491, 494-95 (8th Cir. 2000). "When confronted with a claim of excessive force alleging a violation of the Eighth Amendment, the core judicial inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). "Factors which inform this inquiry include the need for the application of physical force; the relationship between the need for physical force and the amount of force applied; and the extent of injury suffered by the inmate." *Jones*, 207 F.3d at 495.

### A. Fitzhugh

Vice alleges Fitzhugh used excessive force when he wrote Vice up for a false disciplinary report. The core determination when evaluating a claim of excessive force under the Eighth Amendment is whether the alleged excessive force was used "in a good-faith effort to restore discipline[.]" *Santiago*, 707 F.3d at 990 (quoting *Hudson*, 503 U.S. at 6-7). Here, during a fire drill, Vice refused

to comply with staff directives claiming that he was paralyzed. Docket 58-42. In response, Fitzhugh called Health Services to determine whether Vice had a medical condition that would render him paralyzed. Docket 58-41. When Health Services confirmed that Vice did not have a medical condition that would render him paralyzed and did not have a medical order for a wheelchair, Fitzhugh authored a disciplinary report stating that Vice pretended to be paralyzed. *Id.*

Fitzhugh did not utilize excessive force. Fitzhugh relied on Health Services to confirm whether or not Vice was, in fact, paralyzed and then disciplined Vice for refusing directives during a safety drill. Weighing the lack of physical force against the need to maintain safety and order in the prison setting and Fitzhugh's reliance on Health Services, the court finds that Fitzhugh's actions do not rise to the level of excessive force under the Eighth Amendment.

### B. Boysen and Kirvin

Vice alleges that Boysen and Kirvin used excessive force when they sprayed Vice with mace because Vice could not stand up. In *Jones*, the Eighth Circuit upheld a district court's decision to grant a correction officer's motion for judgment as a matter of law on an inmate's claim of excessive force. *Jones*, 207 F.3d at 494. The correction officer sprayed the inmate with capstun after the inmate refused to work and allegedly refused to return to his barracks when instructed. *Id.* at 493. The Eighth Circuit reasoned that the use "of

capstun to control a recalcitrant inmate constitutes a 'tempered response by prison officials[.]' " *Id.* at 496.

In *Burns v. Eaton*, 752 F.3d 1136 (8th Cir. 2014), the Eighth Circuit affirmed the district court's grant of summary judgment on an inmate's claim of excessive force. *Id.* at 1138. The correction officer sprayed the inmate with pepper spray after the inmate refused to be cuffed, argued with the officer, and threw a shampoo bottle at the officer. *Id.* The court noted that the officer warned the inmate that he would be sprayed if he did not comply with orders and that there was no evidence of a malicious motive. *Id.* at 1140. Thus, the court found that the force used was not excessive. *Id.*

Here, Boysen sprayed Vice with mace after Vice refused hand restraints, demanded a new mattress, expressed thoughts of self-harm, and ignored several directives from staff. Docket 58-44; Docket 58-45; Docket 58-46; Docket 58-47. Similar to the officers in *Jones* and *Burns*, Boysen utilized the mace to control Vice after Vice was uncooperative and insubordinate. Thus, Boysen's use of force "was applied in a good-faith effort to maintain or restore discipline," and was not excessive. *Santiago*, 707 F.3d at 990 (quoting *Hudson*, 503 U.S. at 6-7).

As to Kirvin, Vice alleges that "Robert Kirvin sprayed me with mace for not being able to walk." Docket 10 at 2. There is no other evidence in the record of Vice's allegation against Kirvin. While defendants moved generally for summary judgment on all claims, defendants did not provide any evidence of whether an encounter occurred, and if it did, the circumstances of that

encounter[6] in their brief or in their statement of undisputed material facts. *See* Docket 58; Docket 61. The court's screening order, dated December 15, 2016, states that "the court finds that these allegations state a claim of deliberate indifference under the Eighth Amendment against defendants Dr. Carpenter, Boyson, Kirvin, Fitzu, Herrmann, Stoymuet,[7] Top and PA Hanvey. These claims survive screening." Docket 17 at 6. Defendants have not identified any undisputed material facts or made a specific argument on the claims to warrant summary judgment in favor of Kirvin.

### C. Hermann and Stoynov

Vice alleges that Hermann and Stoynov forced him to stand even though he is unable to stand on his own. Docket 10 at 2. Similar to Kirvin, there is no evidence in the record regarding the existence of, or absence of, any interactions between Vice and Hermann or Stoynov.[8] While defendants moved generally for summary judgment on all claims, defendants did not provide any evidence of the circumstances surrounding this allegation in their statement of undisputed facts or argument related to this specific claim in their motion for summary judgment. The court's screening order, dated December 15, 2016, states that "the court finds that these allegations state a claim of deliberate indifference under the Eighth Amendment against defendants Dr. Carpenter,

---

[6] Defendants did not discuss Kirvin in their brief or statement of undisputed facts. The court searched through defendants' submitted exhibits and could not find a reference to Kirvin.

[7] Vice originally referred to CO Stoynov as CO "Stoymuet" in his pleadings.

[8] Defendants' did not discuss Stoynov or Hermann in their brief or statement of undisputed facts. The court searched through defendants' submitted exhibits and could not find a reference to Stoynov or Hermann.

Boyson, Kirvin, Fitzu, Hermann, Stoymuet, Top and PA Hanvey. These claims survive screening." Docket 17 at 6. Defendants have not identified any undisputed material facts that would warrant summary judgment in favor of Hermann or Stoynov.

## III. Vice's Claims under the ADA and RA

Vice alleges PA Hanvey, Dr. Carpenter, and CNP Top violated his rights under the ADA and RA. The court will consider Vice's claims under the ADA and RA together because "[t]he ADA and § 504 of the Rehabilitation Act are 'similar in substance' and . . . 'cases interpreting either are applicable and interchangeable' for analytical purposes." *Bahl v. Cty. of Ramsey*, 695 F.3d 778, 783 (8th Cir. 2012) (quoting *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999)). Title II of the ADA "provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.' " *Id.* (quoting 42 U.S.C. § 12132). "Under the ADA, disability is defined as: '(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment.' " *Taylor v. Nimock's Oil Co.*, 214 F.3d 957, 960 (8th Cir. 2000) (quoting 42 U.S.C. § 12102(2)).

Under the ADA, "an impairment is 'substantially limiting' if it renders an individual unable to perform a major life activity that the average person in the general population can perform, or if it significantly restricts the condition,

manner, or duration under which an individual can perform such an activity compared to the general population." *Taylor*, 214 F.3d at 960 (citing 29 C.F.R. § 1630.2(j)(1)(i)-(ii). "Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, breathing, learning, and working . . . ." *Id.* (citing 29 C.F.R. § 1630.2(i).

Here, Vice alleges that his disability is his inability to walk on his own without a wheelchair. Because walking is considered a major life activity, the inability to walk would be considered a disability under the ADA. But Vice has failed to show that his back injury substantially limits his ability to walk on his own. The facts in the record indicate that there is no medical reason that Vice is unable to walk and medical personnel have indicated that utilizing a wheelchair could make his injury worse. *See* Docket 58-30. As recently as July 27, 2017, medical personnel at Dr. Asfahani's office reported that Vice recovered well from his surgery and only prescribed conservative measures such as ice, heat, and limited lifting, bending and twisting. Docket 58-79 at 3. Thus, even viewing the facts in favor of Vice, there is no dispute of material fact that Vice is able to walk and does not suffer from a disability. Thus, Dr. Carpenter, PA Hanvey, and CNP Top are entitled to summary judgment in their favor.

## IV.    Motions for Preliminary Injunctions and to Appoint Counsel

Vice again moves the court to enter a preliminary injunction. Docket 68; Docket 69; Docket 80. While Vice titles his motions as motions for preliminary injunction, they are actually motions to add new claims to his current

Amended Complaint. The first motion alleges that defendants have implemented a new policy that violates Vice's right to access the courts. Docket 68. The second motion alleges that defendants have failed to adequately treat Vice's sleep apnea. Docket 69. And the third motion again alleges the defendants' new policy violates his right to access the court. Docket 80.

Under Federal Rule of Civil Procedure 15, a party may amend its pleading once as a matter of course within 21 days after serving it. "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Vice failed to follow the local rules, which state:

> [A]ny party moving to amend a pleading must attach a copy of the proposed amended pleading to its motion to amend with the proposed changes highlighted or underlined so that they may be easily identified. If the court grants the motion, the moving party must file a clean original of the amended pleading within 7 days.

D.S.D. Civ. LR 15.1. Because Vice failed to follow the local rules, his motions are denied.

Vice also requests that the court appoint him counsel. Docket 78. "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). In determining whether to appoint counsel to a pro se litigant, the district court considers the complexity of the case, the ability of the litigant to investigate the facts, the existence of conflicting testimony, and the litigant's ability to present

his claim. *Id.* Vice has moved the court to appoint him counsel four times previously. Docket 1; Docket 9; Docket 13; Docket 44. Vice continues to be capable of presenting his claims, and the court will continue to liberally construe his filings. His motion to appoint (Docket 78) is denied.

## CONCLUSION

In conclusion, it is ORDERED that:

1. Defendants' motion for summary judgment (Docket 57) as to defendants Dr. Mary Carpenter, David Fitzhugh, Jess Boysen, CNP Tammy Top, and PA Joe Hanvey is GRANTED;

2. Defendants' motion for summary judgment (Docket 57) as to defendants Kirvin, Hermann, and Stoynov is DENIED;

3. Plaintiff's motions for preliminary injunction (Docket 68; Docket 69; Docket 80) are DENIED;

4. Plaintiff's motion to appoint counsel (Docket 78) is DENIED.

5. Defendants may have until August 30, 2018, to file a motion for summary judgment on the claims against Kirvin, Hermann, and Stoynov.

DATED July 31, 2018.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE